# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

EXXON MOBIL CORPORATION,    )
        )
        Plaintiff,    )
        )
    vs.    )
        )
        )    UNITED STATES DISTRICT COURT
ERIC TRADD SCHNEIDERMAN,    )    FOR THE NORTHERN DISTRICT
ATTORNEY GENERAL OF NEW YORK, )    OF TEXAS
IN HIS OFFICIAL CAPACITY AND    )    Civil Action No. 4:16-CV-469-K
MAURA TRACY HEALEY, ATTORNEY )
GENERAL OF MASSACHUSETTS, IN    )
HER OFFICIAL CAPACITY    )
        )
        Defendants.    )
        )
_____)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH NONPARTY SUBPOENAS ISSUED BY EXXON MOBIL CORPORATION TO THE PAWA LAW GROUP, P.C. AND ATTORNEY MATTHEW PAWA

Exxon Mobil Corporation ("Exxon") has served overly burdensome and intrusive subpoenas on Pawa Law Group ("PLG"), a Massachusetts law firm, and its principal Matthew Pawa. The subpoenas invade their First Amendment rights to petition the government for redress of grievances, to free association, of free speech and to retain and protect their confidential work product and privileged communications with clients and potential clients. PLG has advised attorneys general regarding potential litigation, activity that is protected by the right to petition the government and that entails obvious attorney work product and privileged communications.

Exxon's nonparty subpoenas, to be blunt, seek to destroy PLG as a potential adversary. PLG has a long history of handling major environmental cases, including global warming cases that go to the heart of Exxon's fossil fuel-based business. PLG recently concluded a groundwater contamination case for the State of New Hampshire; following a jury verdict, Exxon was forced to pay New Hampshire $341 million in June 2016. Exxon now seeks to curtail the First Amendment activities and environmental law practice of Pawa and his firm.

Two state attorneys general – New York and Massachusetts – have served a subpoena and civil investigative demand ("CID"), respectively, on Exxon regarding apparent fraud it committed regarding its products' contribution to global warming and its actions in misleading consumers and shareholders about the severity of this environmental problem. In response, Exxon sued those AGs and now seeks to leverage those suits to obtain discovery of nonparty adversaries Pawa and PLG. Exxon's speculative subpoenas to PLG and Pawa will force them to spend hundreds of hours of work, reviewing emails and documents.[1] In many instances, the

---

[1] Pawa conservatively estimates that it will take all of the time of all of PLG's attorneys for a period of approximately two weeks to conduct the document review that would be required by the subpoenas, and several days of time of PLG's sole support staffer. *See* Pawa Decl. ¶ 23(a).

documents may not even exist, but that determination may not be possible without undertaking burdensome review. Exxon's subpoenas strike at the heart of PLG's protected activities and his law practice and are facially invalid. PLG needs the Court's protection from Exxon's abusive tactics.

## BACKGROUND

### I. Pawa Law Group's Work and Expertise in Environmental Litigation.

PLG, located in Newton, Massachusetts, was founded in 2001 by Matthew Pawa. PLG has three lawyers, one of whom is part-time, and one support person. PLG has represented States, and served as co-counsel with attorneys general, on environmental litigation matters for over a decade. *See* Pawa Decl. ¶¶ 3-9. Pawa has litigated cases in the field of global warming law and has served as co-counsel with numerous states in civil cases against greenhouse gas emitters, and assisting states in defending their greenhouse gas laws. PLG has been adverse to Exxon many times.[2] Currently, PLG is counsel (with other firms) for Rhode Island and Vermont in MTBE groundwater contamination cases that those states recently filed against Exxon and other oil companies.

### II. Exxon's Lawsuit Against AGs Healey and Schneiderman.

#### A. Journalists Break the News of What Exxon Knew.

In late 2015 and early 2016, *InsideClimate News* ("ICN") and the *LA Times* published a series of stories showing that, as far back as the late 1970s, Exxon scientists informed Exxon management about global warming's dangers.[3] ICN posted Exxon documents showing that

---

[2] For example, PLG served as co-counsel in *Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849 (9th Cir. 2012), in which an Alaskan Inupiat Eskimo village forced to move from its barrier island because of global warming sued Exxon and other emitters. *See* Pawa Decl. ¶ 9(c).
[3] https://insideclimatenews.org/content/Exxon-The-Road-Not-Taken; http://graphics.latimes.com/exxon-arctic/; http://graphics.latimes.com/exxon-research/; http://graphics.latimes.com/oil-operations/.

Exxon scientists warned management that global warming was real, that there was a "clear scientific consensus" and that the problem posed potentially "catastrophic" threats. Pawa Decl. ¶ 10. Exxon, however, has continued to mislead consumers and shareholders. *Id.* ¶ 12.

## B. The AG Investigations.

The disclosures of Exxon's conduct and knowledge prompted multiple government entities to launch or consider consumer and securities fraud investigations. New York issued a subpoena to Exxon on or around November 5, 2015. Massachusetts issued a CID to Exxon on April 19, 2016 to investigate whether Exxon committed consumer and securities fraud.

PLG did not know that the Massachusetts CID or the New York subpoena were being issued prior to the date of their public announcements and did not partake in the drafting of the CID or subpoena. Exxon nonetheless has targeted PLG primarily because it attended a portion of a meeting of attorneys general offices in New York on March 29, 2016. The New York meeting *post-dated* the issuance of the New York subpoena. AG Healey announced her CID *on the same day* as the New York meeting.

The subpoenaed documents between PLG and attorneys general offices on the subject of what Exxon knew about global warming (*see* Exxon Requests 5 and 6) involve PLG's legal analysis, i.e., the use of legal skills to cull factual material relevant to legal issues, the application of legal doctrines to facts and the offering of opinions on legal issues--all prepared with the primary purpose of anticipated potential litigation. Pawa Decl. ¶ 19. Also, PLG understood at all relevant times that certain AGs were considering retaining outside counsel; thus, all such work product communications about Exxon were treated by PLG as privileged attorney-potential client communications. *Id.* Also, PLG engaged in confidential legal discussions with attorneys general as a public service to report wrongdoing to law enforcement authorities. *Id.* PLG has

never been authorized by any AG office to divulge communications that it believes are privileged and confidential discussions.  *Id.*

## C.  Exxon's Response: Wage War Against its Critics.

On June 15, 2016, Exxon sued AG Healey in Texas federal court seeking an injunction barring the enforcement of the CID to Exxon, and a declaration that the CID violates Exxon's rights.  *Exxon Mobil Corporation v. Healey*, No. 4:16-cv-00469-K (N.D. Tex.) ("*Healey*").  Exxon alleged violations of the First, Fourth and Fourteenth Amendments, the Commerce Clause and abuse of process.  *But see United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1123 (D.C. Cir. 2009) ("Of course, it is well settled that the First Amendment does not protect fraud.").  Exxon also sued to enjoin the CID in Massachusetts state court but moved to stay that action so it could pursue its Texas case.[4]  Massachusetts moved to dismiss the federal complaint on numerous grounds, including lack of personal jurisdiction, absention under *Younger v. Harris*, 401 U.S. 37 (1971), ripeness and improper venue.[5]  The court has not ruled on the injunction or the motion to dismiss.  Rather, the court issued an order permitting limited jurisdictional discovery as it relates to *Younger* abstention.  Order (Oct. 13, 2016), Doc.# 73 in *Healey* (ex. A).  Specifically, the order is focused on "Attorney General Healey's comments and actions before she issued the CID," and whether AG Healey issued the CID in bad faith, thus allegedly precluding *Younger* abstention.  *Id.* at 3, 6.  Exxon filed an amended complaint, which added AG

---

[4] http://www.mass.gov/ago/bureaus/eeb/the-environmental-protection-division/exxon-investigation.html.
[5] *See Hood v. Google*, 822 F.3d 212, 224-26 (5th Cir. 2016) (even if no *Younger* abstention is required, federal case challenging state CID is not ripe where, as here, CID is not self-executing and state has yet to seek enforcement in court).

Schneiderman as a defendant, and seeks to enjoin enforcement of New York's subpoena to Exxon concerning potential consumer and securities fraud violations.[6]

Exxon has served massive and far-reaching discovery. On October 24, Exxon served on AG Healey over one hundred discovery requests despite her pending motion to dismiss and for reconsideration of the Court's order. Healey Opp. Exxon's Mot. to File Amend. Compl., Doc #94 at 5 in *Healey* (Ex. B). On November 4, Exxon noticed the depositions of AGs Schneiderman and Healey as well as two assistant attorneys general in each of their offices. *Id.* at 6. AG Healey's filings state that her office "objects in the strongest terms to Exxon's improper discovery, and it is reasonable to anticipate that other states will also vigorously object to such unwarranted intrusion on their traditional law enforcement authority." *Id.* at 16 (citation omitted). On November 17, 2016, the Texas court *sua sponte* ordered AG Healey to appear for deposition in Dallas on December 13, 2016 and advised AG Schneiderman to be available for his deposition in Dallas on the same date. Order, Doc. #117 (Ex. C). The court also ordered that Healey respond to written discovery within ten days.

### D. Exxon Targets the Pawa Law Group.

On November 9, 2016, Exxon served PLG and Pawa with Fed. R. Civ. P. 45 nonparty subpoenas in connection with its pending Texas lawsuit. Exs. D, E. The following day, Exxon's First Amended Complaint ("FAC") was filed in the Texas case, expressly targeting PLG's use of the court system (*i.e.*, First Amendment petitioning activity). *See, e.g.,* FAC ¶ 7, *Healey* (Ex. F) (alleging PLG is likely to engage in "private litigation made possible by an attorney general-led investigation of ExxonMobil"); *id.* ¶ 45 (alleging PLG has "previously sued ExxonMobil and

---

[6] Many of the pleadings in Exxon's two lawsuits against the Massachusetts Attorney General are available on the AG's web site at http://www.mass.gov/ago/bureaus/eeb/the-environmental-protection-division/exxon-investigation.html.

sought to hold it liable for causing global warming."); *id.* ¶ 51 (PLG has engaged in "efforts to enlist state law enforcement officers" to take legal action against Exxon).[7]

Exxon's nonparty subpoena seeks PLG's compliance, in Boston, with sixteen document requests (and 16 redundant requests to Pawa) within 14 days, *i.e.*, by November 23, 2016. Exxon seeks, among other things, "any communications" between PLG and "any" AG's office concerning the decision of an AG to investigate Exxon over a period of almost five years. *See* Pawa Request No. 5 (Ex. E). Counsel for PLG and Pawa asked Exxon for an extension until December 9. Exxon refused, requiring compliance by 5 p.m. the day before Thanksgiving.

## STANDARD OF REVIEW

The Court "must" quash or modify a nonparty subpoena that "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii, iv). A party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense…" *Id.* 45(d)(1). The Court "must enforce this duty and impose an appropriate sanction," which may include reasonable attorneys' fees, on a party who "fails to comply." *Id.* The scope of discovery "differs significantly between parties and nonparties." *Morse v. Mass. Exec. Office of Pub. Safety Dep't of State Police*, 2014 U.S. Dist. LEXIS 93145, at *3-4 (D. Mass. July 9, 2014). The "relevance" standard of Rule 26 does not apply to nonparties. *Isola USA Corp. v. Taiwan Union Tech. Corp.*, 2015 U.S. Dist. LEXIS 140416, at *7-8 (D. Mass. June 18, 2015). Thus, a party seeking discovery from a nonparty "must establish

---

[7] Exxon is following the same scorched earth approach to litigation that it has taken in other cases. *See, e.g., Exxon Valdez v. Exxon Mobil Corp.*, 568 F.3d 1077, 1079, 1081 (9th Cir. 2009) (describing the "epic" and "hard-fought, even relentless, battle" Exxon waged in response to the 1989 Exxon Valdez oil spill); *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1363 (S.D. Fla. 2005) (describing Exxon's "bad faith attempt[] to make a 'judicial train wreck'" of a claims-administration process as part of a "cynical plan to prolong [a] litigation which has endured more than thirteen years").

that its need for discovery outweighs the nonparty's interest in nondisclosure." *Id.* at *7

(quotation omitted). The "concern for the unwanted burden thrust upon non-parties is a factor

entitled to special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft*

*Corp.*, 162 F.3d 708, 717 (1st Cir. 1998); *see also Cascade Yarns, Inc. v. Knitting Fever, Inc.*,

755 F.3d 55, 59 (1st Cir. 2014) (prohibiting discovery against nonparty); *United Therapeutics*

*Corp. v. Watson Labs.*, 2016 U.S. Dist. LEXIS 129787, at *9 (D. Mass. Sep. 22, 2016) (same).

## ARGUMENT

### I. The Subpoenas Seek Information Protected by the First Amendment.

Any attempt to trawl through an opponent law firm's files raises obvious work product

and attorney-client privilege issues, but here there is a more fundamental objection: the

subpoenas seek documents protected by PLG's constitutional rights to petition government, to

freely associate and to speak out. Whatever the merits of Exxon's underlying claim of a right to

lie about its products, its response may not be to compel disclosures anathema to a free society.

***The Perry test.*** The leading case on the First Amendment privilege from discovery,

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010), has been followed by this Court and

many others.[8] The plaintiffs in *Perry* were gay couples challenging California's ban on same-

sex marriage. The plaintiffs claimed that the ban was motivated by prejudice, and thus

propounded discovery on the ban's proponents (who were defendants), seeking their internal

communications. After the district court ordered production, the Ninth Circuit found that this

decision was so "clearly erroneous" that it issued a mandamus reversing the district court. *Id.* at

---

[8] *See, e.g., Sexual Minorities of Uganda v. Lively*, 2015 U.S. Dist. LEXIS 104636, at *13 (D. Mass. Aug. 10, 2015). The First Circuit has also emphasized that "compelled disclosure implicating First Amendment freedoms must survive an exacting level of judicial scrutiny." *Surinach v. Pesquera De Busquets*, 604 F.2d 73, 79 n.6 (1st Cir. 1979).

1158. The Ninth Circuit's holding had three parts: (1) an identification of activities protected under the First Amendment that could, as a "categorical matter," be adversely affected by disclosure, (2) a more specific analysis of whether the plaintiffs had made a *prima facie* demonstration of "consequences" from disclosure "which objectively suggest an impact" in their particular case, and (3) an analysis of whether the party proposing discovery had established that discovery was warranted notwithstanding the *prima facie* claim to protection – *i.e.*, by showing that discovery was "highly relevant" and "narrowly tailored," and that the documents were unavailable from other sources. *Id.* at 1161-62. Exxon's subpoenas fail these tests.

  **The subpoenas threaten activities protected by the First Amendment.** Seven of Exxon's requests seek information about PLG's communications with state attorneys general. *See* Requests Nos. 1, 2, 4, 5, 6, 12 and 14.[9] These communications are protected by PLG's right to petition government.[10] In *Wyoming v. USDA*, 208 F.R.D. 449 (D.D.C. 2002), the plaintiff issued subpoenas to advocacy groups and an environmental law firm that had allegedly colluded with the Forest Service in designating roadless areas in national forests. The plaintiff sought the groups' communications with the Forest Service; the advocacy groups and law firm moved to quash because the subpoenas would infringe on their rights to petition government. *Id.* at 451.

---

[9] PLG has no documents responsive to Request 3 and, subject to conducting a highly burdensome and expensive document review, PLG believes it has no documents responsive to Requests 2, 4, 10, 12, 13 and 14 in any event. *See* Pawa Decl. ¶ 17. (PLG will not be repeating this point throughout the brief, however, but will make its legal challenges to each and every improper request.)

[10] Attempting to persuade law enforcement officials to bring claims is classic petitioning activity. *See, e.g.*, *Primetime 24 Joint Venture v. NBC*, 219 F.3d 92, 100 (2d Cir. 2000) (activity protected by right to petition includes "concerted efforts incident to litigation," threatened litigation, and "steps preliminary" to judicial proceedings.); *Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 650 (7th Cir. 1983) (right to petition includes "right to attempt to enlist the government on their side"); *Harman v. Valley Nat'l Bank*, 339 F.2d 564, 566 (9th Cir. 1964) ("informing the Attorney General of alleged irregularities and persuading him to take the action which they desired" held protected petitioning).

The court agreed: "it is crucial to remember that we are considering the essence of First Amendment freedoms – the freedom to protest policies to which one is opposed, and the freedom to organize, raise money, and associate with other like-minded persons so as to effectively convey the message of the protest." *Id.* at 454 (quotation marks omitted). Similar requests for private communications between advocacy groups and government have been rejected by other courts.[11] PLG's contacts with the AGs are the same: in both cases there is an exercise of the fundamental right "to petition the Government for a redress of grievances." U.S. Const. Amendment I. These communications are protected.

Three of Exxon's demands seek presentations made at private events. *See* Requests 7, 11, 13. These would be PLG communications with other private actors seeking governmental action against Exxon, just like the communications that were protected in *Perry*. Requests 8 and 9 seek documents concerning Exxon's participation at the Paris climate talks and Exxon's shareholder resolutions, whether or not this information was connected to any particular meeting attended by PLG. This too is protected. If PLG's internal files on Exxon are laid bare to its litigious adversary, it is impossible to expect other persons concerned with Exxon's frauds to associate with PLG.[12]

**PLG's prima facie showing: massive impacts on its First Amendment rights.** There would be "consequences" from disclosure "which objectively suggest an impact on, or chilling

---

[11] *See Wyoming v. USDA*, 2002 U.S. Dist. LEXIS 28407, at *8 (D. Or. Aug. 12, 2002) (similar subpoena served on different NGO in Oregon); *Pebble, L.P. v. EPA*, 310 F.R.D. 575, 583 (D. Alaska 2015) (quashing subpoena seeking communications between NGO and EPA).

[12] *See Sexual Minorities of Uganda*, *supra*, at *9, *15 (refusing to require plaintiff to produce internal documents about anti-homophobia campaign because of "the potential chilling effect of being required to produce information about Plaintiff's strategies."); *Dunnet Bay Constr. Co. v. Hannig*, 2011 U.S. Dist. LEXIS 129959, at *9 (C.D. Ill. Nov. 9, 2011) (gubernatorial campaign's internal analyses of awards of contracts to minority businesses).

of" PLG's associational or petitioning rights. *Perry*, 591 F.3d at 1163 (quotation omitted). These statements of consequences need not be detailed, particularly when it is "self-evident" that disclosure would discourage association with others and the free flow of ideas. *Id.*

If PLG were forced to disclose its internal analyses, its communications with state officials, and/or its communications with other private actors, Exxon would have achieved its goal: it would become impossible for PLG to conduct any work relating to Exxon's fraud, now or in the future. Pawa Decl. ¶ 20. And PLG's attendance at any Exxon-related meeting could compromise the whole meeting. *Id.* In fact, the threat of disclosure has already drastically altered PLG's ability to communicate with state officials and civil society organizations about *any* matter related to Exxon and climate change; no one can talk, of course, when Exxon is listening. *Id.* PLG has this week turned down a speaking invitation from a bar association on the subject of Exxon's potential fraud, thus harming PLG's free speech. *Id.* Exxon has already silenced PLG. The impact on PLG's First Amendment rights is massive.

***Exxon cannot show that its subpoenas are "narrowly tailored."*** Once PLG makes its *prima facie* case, Exxon must show that its subpoenas seek documents highly relevant to its claims, are narrowly tailored to obtain only these documents, and that the information cannot be obtained elsewhere. *Perry*, 591 F.3d at 1161. The subpoenas meet none of these requirements.

Exxon's subpoena is not "narrowly" targeted at "highly relevant" information unavailable from any other source. The only "discovery" Exxon is permitted to take pertains to jurisdiction, *i.e.*, the alleged bias of AG Healey. But Exxon has no basis to believe that PLG has any evidence of bad faith by the Massachusetts and New York AGs, let alone that PLG has information that the AGs lack. Courts routinely quash subpoenas where motive evidence, if it

exists at all, would be available straight from the horse's mouth.[13]  Moreover, the subpoena is not narrow.  It seeks practically every communication PLG has ever had with any employee of any AG office in any state (not just Massachusetts and New York) about Exxon and climate change. It also seeks information that has nothing to do with bad faith by any AG – *e.g.*, presentations to private groups, documents on Exxon shareholder resolutions.  This would be a fishing expedition under any circumstances, but when such broad requests openly target legitimate petitioning and association, it becomes a gross abuse of constitutional rights.

In sum, Exxon's subpoenas seek disclosures which would, without any doubt, seriously compromise the ability of PLG and many others to continue seeking exposure of Exxon's climate misstatements.  Exxon's demands are practically identical to the demands for internal communications struck down in *Perry*, *Wyoming*, *Pebble*, and *Sexual Minorities* – except that Exxon's blunderbuss attempt is more oppressive because it seeks every single document PLG has about Exxon's fraud liability, regardless of whether it was communicated to the Massachusetts and New York AGs, and the subpoena is supposed to be limited to a narrow jurisdictional inquiry.  *See infra*.  Exxon's subpoenas should be quashed.

---

[13] *See, e.g.*, *Perry*, 591 F.3d at 1164-65 (discovery proponents could prove their case using publicly available information and expert witnesses); *Pebble L.P.*, 310 F.R.D. at 582 (relevant evidence "is more likely than not to be duplicated in the records of the EPA, plainly a more convenient source of the information and available to plaintiff"); *Wyoming*, 208 F.R.D. at 455 (information was available from USDA, quashing NGO subpoena); *ETSI Pipeline Project v. Burlington N.*, 674 F. Supp. 1489, 1490 (D.D.C. 1987) (plaintiff had not "sufficiently exhausted all alternative sources for the information sought here").  PLG does not condone discovery of the AGs but merely points out that if any discovery is to be taken on the point, it should be from a nonparty.

## II. The Subpoenas Impermissibly Seek Work Product and Privileged Materials.

Exxon's nonparty subpoenas "must" be quashed insofar as they seek "disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A)(iii). The privileges here are governed by federal common law. Fed R. Evid. 501.

Courts are especially vigilant about enforcing the work product immunity and attorney-client privilege relating to constitutionally protected petitioning conduct: "The Supreme Court has recognized that [*Noerr-Pennington* petitioning] activities are desirable, and the attorney/client privilege and work product immunity further the policy behind this recognition by facilitating petitioning activity that, as in this case, requires the assistance of attorneys." *In re Burlington N., Inc.*, 822 F.2d 518, 525 (5th Cir. 1987) (reversing order allowing discovery). Here, Request Nos. 1, 2, 5, 6, 12 and 14 all infringe on protected petitioning activity. This Court can evaluate privilege claims without a formal privilege log because Exxon's requests target privileged materials and invade First Amendment rights. Courts routinely hold that a log is not required in a case like this where the burden to produce a log may be "unduly time consuming and burdensome." *Alltel Communs., LLC v. DeJordy*, 2011 U.S. Dist. LEXIS 16863, at *14 (D.S.D. Feb. 17, 2011), *rev'd on other grounds by* 675 F.3d 1100 (8th Cir. 2012). There is "no rule [which] prevents the court from waiving the privilege log requirement to reduce a nonparty's burden." *Perry v. Schwarzenegger*, 268 F.R.D. 344, 353 (N.D. Cal. 2010).[14]

### A. Attorney Work Product.

The subpoenas "must" be quashed to the extent they seek attorney work product (Request nos. 1, 2, 4, 5, 6, 7, 12, 14). Fed. R. Civ. P. 26(b)(3)(A); Fed. R. Civ. P.

---

[14] *See also In re Imperial Corp. of Am. v. Shields*, 174 F.R.D. 475, 479 (S.D. Cal. 1997) (forcing creation of privilege log of documents of that magnitude is unreasonable and overly burdensome"); *SEC v. Thrasher*, 1996 U.S. Dist. LEXIS 3327, at *3 (S.D.N.Y. Mar. 19, 1996) (demand seeking "wholesale production of ordinarily privileged documents could be evaluated without log).

45(d)(3)(A)(iii). The "work-product doctrine is distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975). It "protects against disclosure of materials that a party, her attorney, or her representative prepares in anticipation of litigation." *In re Grand Jury Subpoena*, 220 F.R.D. 130, 141 (D. Mass. 2004). "At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. The work product doctrine is reflected in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." *In re Grand Jury*, 106 F.R.D. 255, 257 (D.N.H. 1985) (citation omitted). The doctrine protects an attorney's work in "'sifting what he considers the relevant from the irrelevant.'" *In re Grand Jury Subpoena*, 220 F.R.D. 130, 156 (D. Mass. 2004) (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)). "The general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order." *In re Grand Jury*, 106 F.R.D. at 257.

The doctrine protects both "fact" and "opinion" work product. Fact work product is protected unless the opposing party "demonstrates a 'substantial need' for the information and an 'undue hardship' should it not be produced." *United States v. Cadden*, 2015 U.S. Dist. LEXIS 133048, at *7 (D. Mass. Sep. 30, 2015); Fed. R. Civ. P. 26(b)(3)(A)(i-ii). "Opinion work product, on the other hand, falls under a near absolute protection from disclosure." *Cadden*, 2015 U.S. Dist. LEXIS 133048, at *7 (quotation omitted); Fed. R. Civ. P. 26(b)(3)(B).

Here, Request Nos. 1, 2, 4, 5, 6, 7, 12, 14 categorically seek attorney work product documents prepared in "anticipation" of litigation. "The concept of 'anticipation of litigation'

embodies both a temporal and motivational aspect. In *Upjohn*, the Supreme Court applied the work-product doctrine even though no proceedings against the company had been threatened at the time the documents were prepared." *Hilton-Rorar v. State & Fed. Communs., Inc.*, 2010 U.S. Dist. LEXIS 36121, at *26 (N.D. Ohio Apr. 13, 2010) (quotation and citation omitted). "Many courts have held" that "once a governmental investigation has begun, litigation is sufficiently likely to satisfy the 'anticipation' requirement." *In re Grand Jury Subpoena*, 220 F.R.D. at 147. The lawyer simply "must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." *Id.* "It does not matter whether the anticipated litigation ever occurs." *Id.* Moreover, the "likelihood of an enforcement action or litigation may be so great that materials prepared before an investigation begin to qualify for work product protection." *Id.* at 157. "The most important inquiry for a court is to determine the primary motivating purpose behind the creation of the document." *In re First Commodity Corp. of Bos. Customer Accounts Litig.*, 1987 U.S. Dist. LEXIS 4210, at *2-3 (D. Mass. May 15, 1987) (quotation omitted).

PLG is a trial firm. Pawa Decl. ¶ 2, 4, 8. PLG prepared documents responsive to the relevant requests in anticipation of litigation and engaged in traditional legal analysis, by culling factual material relevant to legal issues, applying legal doctrines to facts and offering legal analysis for prospective clients. *Id.* ¶¶ 15, 18. PLG would not have created the documents "but for the anticipated litigation;" the responsive documents are opinion work product.[15]

---

[15] *See Thomas & Betts Corp. v. New Albertson's, Inc.*, 2014 U.S. Dist. LEXIS 186918, at *18 (D. Mass. July 21, 2014); *see also William A. Gross Constr. Assocs. v. Am. Mfrs. Mut. Ins. Co.*, 262 F.R.D. 354, 360 (S.D.N.Y. 2009). In fact, by its allegation that PLG encouraged state Attorneys General to investigate Exxon's conduct, Exxon has conceded that PLG subjectively thought that litigation was a real possibility. *See In re First Commodity Corp. of Bos. Customer Accounts Litig.*, 1987 U.S. Dist. LEXIS 4210, at *3-4 (D. Mass. May 15, 1987).

B.  <u>Attorney-Client Privilege.</u>

The subpoenas "must" be quashed to the extent they seek attorney-client

privileged documents (Request Nos. 1, 2, 5, 6, 12, 14).  The "highly valued" attorney-

client privilege protects confidential communications that "are made for the purpose of

seeking or receiving legal advice."  *XYZ Corp. v. United States (In re Keeper of the*

*Records)*, 348 F.3d 16, 22 (1st Cir. 2003).  It is meant to "encourage full and frank

communication between attorneys and their clients and thereby promote broader public

interests in the observance of law and administration of justice."  *Upjohn Co. v. United*

*States*, 449 U.S. 383, 389 (1981).

Whether or not any AG retained PLG is immaterial:  the "attorney-client privilege

protects conversations between prospective clients and counsel."  *In re Bevill, Bresler &*

*Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 124 n.1 (3d Cir. 1986); *accord Newmarkets*

*Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 100 (S.D.N.Y. 2009)

("attorney-client relationship can arise prior to formal engagement," and applies to an attorney

"who is not ultimately hired").  Any communications that reveal the "motive of the client in

seeking representation, litigation strategy, or the specific nature of the services provided, such as

researching particular areas of law, fall [s] within the privilege."  *Newmarkets Partners*, 258

F.R.D. at 101 (quotation omitted).  The privilege holder must simply demonstrate: "1) that he

was or sought to be a client of the attorney; 2) that such attorney, in connection with the

document, acted as a lawyer; 3) that the document relates to facts communicated for the purpose

of securing a legal opinion, legal services or assistance in a legal proceeding; and 4) that the

privilege has not been waived."  *E. Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*, 2014

U.S. Dist. LEXIS 129272, at *5 (D.N.H. Sept. 16, 2014).

Here, Request Nos. 1, 2, 4, 5, 6, 12, 14 categorically seek privileged communications. AG offices were prospective clients of PLG and PLG understood, based upon objective information, that those states were actively considering hiring outside counsel generally and PLG specifically. Pawa Dec. ¶ 19. PLG has never been authorized by any AG office to disclose these communications and cannot do so. *Id.* Responsive documents include communications in PLG's capacity as a law firm and relate to facts communicated for the purpose of offering legal opinions, legal services or assistance in potential legal proceedings. *Id.* ¶ 15-16, 18, 19. PLG believes that AG offices, like PLG, have not disclosed such communications and documents to third parties who do not share in the privilege.[16]

C. The Law Enforcement and State Investigatory Privileges.

The First Circuit recognizes a law enforcement privilege that is applied to "prevent interference with an investigation." *Puerto Rico v. United States*, 490 F.3d 50, 63-64 (1st Cir. 2007) (quotation omitted). Courts determine whether the privilege applies by "balancing the [government's] interest in preserving the confidentiality of sensitive law enforcement techniques against the requesting party's interest in disclosure." *Id.* at 64. The interest in protecting investigatory files from disclosure is "particularly strong when they pertain to an ongoing investigation." *Hunter v. Heffernan*, 1996 U.S. Dist. LEXIS 9244, at *7 (E.D. Pa. June 27, 1996). There is a "strong presumption against lifting the [law enforcement] privilege." *Dinler v. City of N.Y. (In re City of N.Y.)*, 607 F.3d 923, 950 (2d Cir. 2010) (quotation omitted).

No AG has authorized PLG to disclose the information at issue. Exxon cannot sustain any basis for overriding this privilege.

---

[16] The fact that PLG may have communicated with multiple states at the same time does not constitute waiver because the AGs have a common interest. *See, e.g., Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 93 (D. Mass. 2002) (common interest doctrine protects privilege).

### III. Exxon's Subpoenas Improperly Seek Nonparty Discovery in an Apparent Attempt to Support a Frivolous Lawsuit Against the Nonparty.

"When the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978). Nonparty subpoenas properly are quashed if they seek discovery to support potential claims against a nonparty.[17]

Exxon makes numerous allegations regarding PLG in its Texas lawsuit. FAC ¶¶ 3, 4, 46, 51. Exxon is on a fishing expedition seeking any possible basis to sue PLG. Hence these subpoenas from an adversary with unlimited litigation resources.

Exxon's abuse of the Rule 45 subpoena power is especially egregious here as it could never directly gather the information that it now seeks indirectly, because of the Massachusetts Anti-SLAPP statute, M.G.L. c. 231 § 59H, which provides for a prompt dismissal of litigation that targets petitioning activity. SLAPP suits include those that target people for "reporting violations of law" and "writing to government officials," among other things. *Duracraft Corp. v. Holmes Prods. Corp.*, 427 Mass. 156, 161 (1998); *see also Wenger v. Aceto*, 451 Mass. 1, 7 n.6 (2008) (SLAPP suit used to "chill, intimidate, or punish citizens who have exercised their constitutional right to petition the government to redress a grievance") (quotation omitted). The statute protects both individuals and corporate entities. *Keegan v. Pellerin*, 76 Mass. App. Ct. 186, 192 (2010).

---

[17] *Meta v. Target Corp.*, 2015 U.S. Dist. LEXIS 158720, at *6 (E.D. Wis. Nov. 24, 2015) (quashing nonparty subpoena as improper "attempt to gather information about [nonparty's] products to support potential future claims against [nonparty]"); *Braxton v. Heritier*, 2015 U.S. Dist. LEXIS 115295, at *4 (E.D. Mich. Aug. 31, 2015) (quashing nonparty subpoena as "fishing expedition[]" that sought documents "in order to explore a possible claim against non-party"); *Blue Angel Films, Ltd. v. First Look Studios, Inc.*, 2011 U.S. Dist. LEXIS 23696, at *4 (S.D.N.Y. Mar. 9, 2011) (quashing nonparty subpoena because "information relevant only to potential claims against [the nonparty] is not discoverable").

#### IV. Exxon's Subpoenas are Unduly Burdensome.

The Court "must enforce" the duty of a party issuing a nonparty subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Similarly, under Rule 26, a court "must limit" the extent of discovery if it determines that the "discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). A court considers the following factors in determining whether a subpoena imposes an "undue burden" on a nonparty: "(1) the relevance of the information requested; (2) the need of the [non]-party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; (6) the burden imposed; and (7) the expense and inconvenience to the non-party." *Rockstar Consortium US LP & Netstar Techs. LLC v. Google Inc.*, 2015 U.S. Dist. LEXIS 139770, at *13-14 (D. Mass. Oct. 14, 2015) (quotation omitted). Here, the only discovery authorized by the Texas federal court relates to the *Younger* "bad faith" exception, which is "very narrowly construed," *United Books, Inc. v. Conte*, 739 F.2d 30, 34 (1st Cir. 1984), i.e., "'bad faith' in this context generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid [finding of liability]," *id*. (quoting *Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975)).

Exxon's subpoenas are overbroad and unduly burdensome on numerous grounds. First, the PLG subpoena seeks documents from January 1, 2014. PLG subpoena ¶ 33; the Pawa subpoena calls for documents back to January 1, 2012. Yet, the issue of Exxon's early knowledge about global warming that sparked the current AG investigations emerged in earnest

in September 2015 with the first *ICN* publication. Nevertheless, Exxon seeks documents for years earlier.

Second, PLG has conservatively estimated that it would take all of the time of all of PLG's attorneys for a period of approximately two weeks to conduct the documents review in response to the Exxon subpoenas and several days of time from PLG's sole support staffer. If a privilege log were required, this time would increase very substantially and could consume up to a month or more of time. Pawa Dec. ¶ 23. The process would also be costly in terms of IT and outside counsel fees. *Id.* 21, 23.

Third, the subpoenas seek documents irrelevant to whether a bad faith exception to *Younger* might exist, because they seek other than communications with the Massachusetts and New York AGs. *See* Pawa and PLG request nos. 7, 8, 9, 11, 13, 15, 16. Also, certain requests which do seek such communications are unduly burdensome and overbroad because they seek documents *beyond those* to the Massachusetts and New York AGs. *See* Request Nos. 4, 5, 6, 10, 12, 14. Subpoenas seeking such "largely irrelevant information" are unduly burdensome. *Google*, 2015 U.S. Dist. LEXIS 139770, at *16.

Exxon's subpoena issued to Pawa individually should be quashed as duplicative; redundant subpoenas are routinely quashed. *See, e.g.*, *Ameristar Jet Charter v. Signal Composites*, 244 F.3d 189, 193 (1st Cir. 2001). The two subpoenas here are virtually identical and any responsive documents are solely in the custody and control of PLG. Pawa Dec. ¶ 16.

Finally, movants request an award of attorney's fees and costs; the Court "must" impose an appropriate sanction on Exxon for its abuse of Rule 45. Fed. R. Civ. P. 45(d)(1); *Google*, 2015 U.S. Dist. LEXIS 139770, at *22 (awarding fees under Rule 45); *Liberty Mut. Ins. Co. v. Diamante*, 194 F.R.D. 20, 23 (D. Mass. 2000) (same).

**CONCLUSION**

The Pawa Law Group, P.C. and Matthew Pawa respectfully request that the Court quash Exxon's nonparty subpoenas in their entirety and award related relief as requested in its accompanying motion.

Dated: November 23, 2016

Respectfully submitted,
PAWA LAW GROUP, P.C.
MATTHEW PAWA
By their attorneys,

/s/  Michael L. Chinitz
Michael L. Chinitz BBO# 552915
ROSE, CHINITZ & ROSE
One Beacon Street, 23rd Floor
Boston, Massachusetts 02108
Telephone: (617) 536-0040
Fax: (617) 536-4400
mlc@rose-law.net

Catherine S. Duval BBO# 655004*
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036-5807
Telephone: (202) 778-1800
Fax: (202) 822-8106
cduval@zuckerman.com

* *Pro hac vice* application forthcoming