**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>ERIC TRADD SCHNEIDERMAN, ATTORNEY GENERAL OF NEW YORK, IN HIS OFFICIAL CAPACITY AND MAURA TRACY HEALEY, ATTORNEY GENERAL OF MASSACHUSETTS, IN HER OFFICIAL CAPACITY<br><br>Defendants. | ) | **Misc. Action No. 1:16-mc-91354**<br><br>**Pending in United States District Court for the Northern District of Texas Civil Action No. 4:16-CV-469-K**<br><br>The Honorable William G. Young |

# PLAINTIFF EXXON MOBIL CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO QUASH FILED BY MOVANTS PAWA LAW GROUP, P.C. AND ATTORNEY MATTHEW PAWA AND IN SUPPORT OF ITS CROSS-MOTIONS TO TRANSFER AND TO COMPEL

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 3

ARGUMENT ........ 7

I. THE COURT SHOULD TRANSFER THIS MOTION TO THE NORTHERN DISTRICT OF TEXAS ........ 7

A. Applicable Law ........ 7

B. Discussion ........ 8

1. Transfer Is Proper Because the Questions Presented by This Motion Will Arise in Multiple Jurisdictions. ........ 8

2. Transfer Is Proper to Avoid Frustrating the Issuing Court's Management of Discovery. ........ 9

3. Transfer Is Proper Because the Issuing Court Is Best Positioned to Assess the Effect of the Discovery Order on the Litigation as a Whole. ........ 9

II. IF THE COURT CHOOSES TO DECIDE THESE MOTIONS, THE COURT SHOULD DENY THE MOTION TO QUASH AND COMPEL COMPLIANCE WITH THE SUBPOENAS. ........ 10

A. Pawa Fails to Show that Compliance Will Chill his First Amendment Rights. ........ 11

1. Applicable Law ........ 11

2. Discussion ........ 12

B. The Requested Materials Are Not Protected by Any Privilege. ........ 15

1. Applicable Law ........ 15

2. Discussion ........ 16

C. The Subpoenas' Requests Are Not Overbroad, and the Court Should Compel Compliance with the Subpoenas. ........ 17

1. Applicable Law ........ 18

2. Discussion ........ 19

**Page**

CONCLUSION .......................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*A & R Body Specialty & Collision Works, Inc.* v. *Progressive Cas. Ins. Co.*,
No. 3:07-CV-929-WWE, 2013 WL 6044333 (D. Conn. Nov. 14, 2013)................................11

*Agincourt Gaming, LLC.* v. *Zynga, Inc.*,
No. 2:14-CV-0708-RFB-NJK, 2014 WL 4079555 (D. Nev. Aug. 15, 2014) .....................8, 10

*Ass'n for Women in Sci.* v. *Califano*, 566 F.2d 339 (D.C. Cir. 1977) ..........................................17

*In re Atl. Fin. Mgmt. Sec. Litig.*,
121 F.R.D. 141 (D. Mass. 1988)..........................................................................15, 17

*Bailey* v. *Maine Comm'n on Governmental Ethics & Election Practices*,
No. 1:11-CV-00179-JAW, 2011 WL 6370084 (D. Me. Dec. 19, 2011) ...........................11, 13

*United States* v. *Bay State Ambulance & Hosp. Rental Serv., Inc.*,
874 F.2d 20 (1st Cir. 1989).......................................................................................17

*Blackman* v. *Savino*,
No. 13-P-1054, 2014 WL 1499346 (Mass. App. Ct. Apr. 18, 2014).......................................14

*Bruno & Stillman, Inc.* v. *Globe Newspaper Co.*,
633 F.2d 583 (1st Cir. 1980).......................................................................................12

*Cavallaro* v. *United States*,
284 F.3d 236 (1st Cir. 2002)..............................................................................15, 16

*Colonial Gas Co.* v. *Aetna Casualty and Surety Co.*,
144 F.R.D. 600 (D. Mass 1992)...........................................................................15, 17

*United States* v. *Comley*,
890 F.2d 539 (1st Cir. 1989).......................................................................................11

*Competitive Enterprise Institute* v. *Attorney General of N.Y.*,
No. 5050-16, 2016 WL 6989406 (N.Y. Sup. Ct. Albany Cty. Nov. 21, 2016) .......................11

*Costco Wholesale Corp.* v. *Crane*,
No. 16-mc-80189, 2016 WL 5394115 (N.D. Cal. Sep. 27, 2016).............................................9

*United States* v. *Dennis*,
843 F.2d 652 (2d Cir. 1988)...............................................................................15, 16

*Enargy Power (Shenzhen) Co.* v. *Xiaolong Wang*,
No. 13-11348-DJC, 2014 WL 2048416 (D. Mass. May 16, 2014) .........................................20

*Gill* v. *Gulfstream Park Racing Ass'n., Inc.*,
399 F.3d 391 (1st Cir. 2005) ........................................................................................18

*Google, Inc.* v. *Digital Citizens Alliance*,
No. 15-00707, 2015 WL 4930979 (D.D.C. July 31, 2015) .............................................7, 8, 9

*In re Grand Jury Proceedings*,
802 F.3d 57 (1st Cir. 2015) ..........................................................................................16

*In re Grand Jury Subpoena*,
Misc. No. 86-738, 1986 WL 13539 (D. Mass. Nov. 26, 1986) .............................................16

*Green* v. *Cosby*,
152 F. Supp. 3d 31 (D. Mass. 2015) ..............................................................................19

*Hanover Ins. Co.* v. *Rapo & Jepsen Ins. Services, Inc.*,
449 Mass. 609 (2007) ....................................................................................................17

*Hispanic Leadership Fund, Inc.* v. *Walsh*,
No. 112 Civ. 1337-MADTWD, 2014 WL 12586844 (N.D.N.Y. June 9, 2014) .....................12

*Jobs First Indep. Expenditure Political Action Comm.* v. *Coakley*,
No. 14-14338-NMG, 2016 WL 6661142 (D. Mass. Nov. 10, 2016)......................................14

*United States* v. *Lilly*,
185 F.R.D. 113 (D. Mass. 1999) ....................................................................................17

*McLarnon* v. *Deutsche Bank Nat. Trust Co.*,
No. 14-13233-FDS, 2014 WL 5317813 (D. Mass. Oct. 17, 2014)........................................14

*In re Motor Fuel Temperature Sales Practices Litig.*,
641 F.3d 470 (10th Cir. 2011) ...................................................................................11, 12

*Mount Hope Church* v. *Bash Back!*,
705 F.3d 418 (9th Cir. 2012) .........................................................................................20

*Newton* v. *Nat'l Broad. Co*.,
109 F.R.D. 522 (D. Nev. 1985).................................................................................12, 14

*United States* v. *Ocasio*,
No. EP–11–CR–2728–KC, 2013 WL 2458617 (W.D. Tex. June 6, 2013)............................15

*Providence Piers, LLC* v. *SMM New England, Inc.*,
No. 12-532S, 2014 WL 11532189 (D.R.I. Mar. 25, 2014).....................................................20

*In re Pub. Offering PLE Antitrust Litig.*,
233 F.R.D. 70 (D. Mass. 2006)........................................................................................18

*Rockstar Consortium US LP* v. *Google*, No. 14-91322-FDS, 2015 WL 5972422 (D. Mass. Oct. 14, 2015)....................18

*Rodriguez* v. *Municipality of San Juan*, 659 F.3d 168 (1st Cir. 2011)....................16

*Sawyer* v. *Purdue Pharm. Corp.*, No. 12-MC-019-LM, 2012 WL 1949334 (D.N.H. May 29, 2012)....................18

*Sexual Minorities of Uganda* v. *Lively*, No. 3:12-30051-MAP, 2015 WL 4750931 (D. Mass. Aug. 10, 2015)....................12

*Sterling Merch., Inc.* v. *Nestle, S.A.*, 470 F. Supp. 2d 77 (D.P.R. 2006)....................15, 17

*Tendler* v. *www.jewishsurvivors.blogspot.com*, 164 Cal. App. 4th 802 (2008)....................14

*E.E.O.C.* v. *Texas Roadhouse, Inc.*, 303 F.R.D. 1 (D. Mass. 2014)....................18

*Thomas & Betts Corp*. v. *New Albertson's, Inc.*, No. 10-11947-DPW, 2013 WL 11331377 (D. Mass. July 11, 2013)....................18, 20

*United Therapeutics Corp.* v. *Watson Labs., Inc.*, No. 16-MC-91176, 2016 WL 5334653 (D. Mass. Sept. 22, 2016)....................18

*Valle del Sol, Inc.* v. *Kobach*, No. 14-mc-219, 2014 WL 3818490 (D. Kan. Aug. 4, 2014)....................7, 8, 10

*Wultz* v. *Bank of China, Ltd.*, 304 F.R.D. 38 (D.D.C. 2014)....................8

## STATUTES

MASS. GEN. LAWS ch. 231, § 59H (2016)....................14

## OTHER AUTHORITIES

First Amendment.................... *passim*

Fed. R. Civ. P. 26(b)....................18

Fed. R. Civ. P. 26(b)(1)....................18

Fed. R. Civ. P. 26(b)(3)....................15, 17

Fed. R. Civ. P. 34....................18

Fed. R. Civ. P. 45 .......... 2, 7, 10, 18, 20

Fed. R. Civ. P. 45(c)(1) .......... 20

Fed. R. Civ. P. 45(d) .......... 20

Fed. R. Civ. P. 45(f) .......... 7, 8

Exxon Mobil Corporation ("ExxonMobil") respectfully submits this memorandum in opposition to the motion to quash filed by Matthew Pawa and the Pawa Law Group ("Pawa") and in support of its cross-motion to transfer, or in the alternative, to compel production of responsive materials.

## PRELIMINARY STATEMENT

The instant motions belong in the Northern District of Texas. This is true for no fewer than three reasons. *First*, the questions presented by these motions require the interpretation of a discovery order, recently issued by a federal district court in the Northern District of Texas, authorizing jurisdictional discovery to aid that court in ascertaining whether the Massachusetts Attorney General issued a civil investigative demand ("CID") to ExxonMobil in bad faith. Axiomatically, the issuing court is best positioned to interpret its own order. And indeed, it has already begun to do so: The court just decided two motions filed by the Massachusetts Attorney General concerning its discovery order. And currently pending before it is a motion to quash filed by the New York Attorney General, which raises privilege objections paralleling those Pawa asserts. This Court should transfer Pawa's motion to the issuing court, so that it can resolve in the first instance all the pending questions that relate to its order.

*Second*, while this Court may be the first to confront the meaning and scope of the issuing court's discovery order as it applies to third parties, it will not be the last. Pursuant to the discovery order, ExxonMobil served subpoenas on 11 different non-parties, which are returnable in five different jurisdictions. Each of the non-parties has raised objections that are nearly identical to those Pawa here advances. These objections require rulings on issues such as scope, relevance, and the privilege afforded to communications with the parties, which the issuing court is uniquely situated to resolve. If each court were to independently resolve these questions, it would create a substantial risk of inconsistent interpretations of the issuing court's discovery order. Under Rule 45 of the Federal Rules of Civil Procedure, the prospect of inconsistent

outcomes alone is sufficient reason to transfer this motion.

*Third*, transfer is warranted to avoid interfering with the discovery schedule that the issuing court is directly and personally supervising to expedite these proceedings. To that end, the Honorable Ed Kinkeade of the United States District Court for the Northern District of Texas has ordered expedited briefing of the motions filed by the Massachusetts and New York Attorneys General concerning his discovery order. Subject to their availability, he also set Attorney General Healey's deposition for December 13 and instructed Attorney General Schneiderman to be available on that date as well. The materials sought by the subpoenas likely would feature prominently in the December 13 depositions, and the issuing court is best positioned to determine how these motions relate to its expedited schedule and the jurisdictional questions pending before it.

If this Court chooses to resolve the instant motions rather than transfer them, it should deny Pawa's motion to quash and grant ExxonMobil's cross-motion to compel production pursuant to the subpoenas. Pawa concedes that he possesses materials responsive to at least nine of the subpoenas' requests, and that at least some of these documents cannot be obtained from the parties or any other subpoena recipient. Nevertheless, Pawa refuses to produce, or even review, these materials, invoking the protections of the First Amendment and at least five privilege doctrines. These objections are unavailing.

In an attempt to confuse the issues, Pawa asserts his First Amendment right to petition the attorneys general. But the lawfulness of Pawa's conduct is not at issue here. Rather, the subpoenas seek evidence of the bad faith efforts of the Attorney General to misuse law enforcement tools to curtail ExxonMobil's free speech on an issue of public concern—a strategy Pawa has publicly advocated for years. Because public records reveal the concerted efforts of the attorneys general to shield their coordination with Pawa and other privately interested persons from public view, the subpoenas seek documents in Pawa's custody substantiating the bad faith

conspiracy between the attorneys general. ExxonMobil has a compelling need for these records, to which it is entitled pursuant to the discovery order.

Furthermore, Pawa fails to carry his burden on each of his assertions of privilege. Citing the protections of the First Amendment, Pawa claims that his speech has been chilled, but he has identified no concrete consequence that would follow from his compliance with the subpoenas. Pawa says that the subpoenas seek communications protected by the attorney-client privilege, but he has identified no client or prospective client to or from whom the communications were made. He claims that the materials are nevertheless attorney work product, but he can point to no party on whose behalf he created them. He even cites the law enforcement privilege, but never explains how this privilege could apply to a private citizen like him.

Pawa's other objections are similarly baseless. He claims an undue burden, and that he should not be compelled to participate in third-party discovery. But the discovery order pursuant to which the subpoenas were issued specifically names Pawa and discusses his participation in the events giving rise to ExxonMobil's claims. The Court should deny Pawa's motion to quash and grant ExxonMobil's motion to compel if it declines to transfer these motions.

## STATEMENT OF FACTS

This discovery dispute arises out of a civil rights action commenced by ExxonMobil against the Massachusetts Attorney General. (Dkt. 1.)[1] At a press conference held earlier this year by a coalition self-identifying as the "AGs United for Clean Power," the Massachusetts Attorney General and several other attorneys general announced that they were investigating ExxonMobil. (Ex. B at 1.) The comments made by attorneys general at the press conference revealed that the investigations were motivated, not by their duty to enforce their state's laws,

[1] All citations in the format "Dkt. __" refer to filings in the underlying proceeding, *Exxon Mobil Corporation* v. *Schneiderman*, No. 4:16-CV-469-k (N.D. Tex.). ExxonMobil originally named only the Massachusetts Attorney General as a defendant. (Dkt. 1.) It later amended its complaint and joined the New York Attorney General as a defendant, (Dkt. 100), in connection with the subpoena issued by that office. (Ex. A.) All citations in the format "Ex. __." refer to exhibits to the Declaration of Michelle Parikh, dated December 7, 2016.

but by a desire to promote their shared political agenda regarding climate change. (*See, e.g.*, *id.*) Declaring that she had a "moral obligation" to move the country toward a "clean energy future," the Massachusetts Attorney General vowed to take "quick, aggressive action" to hold ExxonMobil accountable. (*Id.* at 11-13.) She also prematurely forecasted what her investigation would find: a "troubling disconnect between what Exxon knew" and what it "chose to share with investors and the American public." (*Id.* at 12.) Three weeks later, the Attorney General of Massachusetts issued a CID to ExxonMobil, which demanded effectively every document ExxonMobil had produced or received concerning climate change since 1976. (Ex. C.) ExxonMobil thereafter commenced an action against the Massachusetts Attorney General, alleging that the investigation constituted viewpoint discrimination, which violated the First Amendment as well as other provisions of the U.S. Constitution. (Dkt. 100 ¶¶ 105-128.)

The Massachusetts Attorney General moved to dismiss the Complaint, arguing that the *Younger* doctrine required the court to abstain from hearing the claims, in light of the later filed action pending in Massachusetts State Court. (Dkt. 41 ¶ 6.) In its opposition, ExxonMobil contended that *Younger* did not apply, in part because the Attorney General had issued her CID in bad faith. (Dkt. 60 at 17-19.)

After the Attorney General's motion was fully briefed, the court entered the discovery order from which Pawa's motion arises. (Dkt. 73) The court explained that it found "the allegations about Attorney General Healey and the anticipatory nature of [her] remarks about the outcome of the Exxon investigation to be concerning" and stated that, these allegations, "if true, may constitute bad faith which would preclude *Younger* abstention." (*Id.* at 5-6.) It therefore ordered "that jurisdictional discovery by both parties be permitted to aid the Court in deciding whether th[e] law suit should be dismissed on jurisdictional grounds." (*Id.* at 6.)

Matthew Pawa featured prominently in the court's discovery order. Among the allegations the court found concerning was Pawa's "closed door meeting" with the attorneys

general, and for good reason. (*See id.* at 4.) Since at least 2012, Pawa and other private parties have sought to enlist law enforcement officers in the service of political objectives. (Dkt. 1 ¶¶ 46-51.) For example, in 2012, Pawa attended a private conference that called for persuading "a single sympathetic state attorney general" to bring "key internal documents to light" from fossil fuel companies like ExxonMobil. (Ex. D at 11.) And in January 2016, Pawa apparently attended an event concerning ExxonMobil, which sought to establish the "Goals of an Exxon campaign," including "[t]o establish in the public's mind that Exxon is a corrupt institution that has pushed humanity (and all of creation) toward climate chaos" and "[t]o delegitimize them as a political actor." (Ex. E.)

The record before the issuing court suggests that the current investigations of ExxonMobil may represent a milestone in Pawa's efforts. Pawa attended a closed door meeting with the attorneys general on the day Attorney General Healey announced her investigation at the press conference.[2] According to the meeting's agenda, Pawa spoke to the assembled attorneys general on "climate change litigation." (Ex. G at 3.) When a reporter contacted Pawa the following day, Pawa asked Lemuel Srolovic—the New York Assistant Attorney General who issued a subpoena to ExxonMobil in November 2015 (Ex. A)—"[w]hat should I say if she asks if I attended?" Mr. Srolovic encouraged Pawa to conceal his attendance from the public, asking Pawa "to not confirm that you attended or otherwise discuss the event." (Ex. H.) This instruction conflicted with the expectation of at least some of the other meeting attendees. For instance, in regard to the then-upcoming meeting, the Vermont Attorney General's Office explained that "anyone providing anything in writing at the conference should assume it may get produced" and noted that Pawa, in particular, "should stick to what is in the public domain or be prepared to

[2] Although Pawa asserts that "neither [he] nor anyone from PLG had involvement with [the Green 20] Press Conference," (Pawa Decl. ¶ 17(a)), an article discussing the press conference described Pawa as"a lawyer affiliated with the Climate Accountability Institute who briefed the attorneys general before their press conference,"and advocated that "Exxon needs to 'come clean about its commercial relationships with those it has paid to peddle its message of climate denial.'"Ex. F at 3.

have those materials become public." (Ex. I at 1.) It should come as no surprise, then, that the discovery order specifically references Pawa and his involvement with the investigations that are the subject of the suit. (Dkt. 73 at 4.)

Since the court entered its discovery order, this litigation has progressed rapidly. The Massachusetts Attorney General filed a motion to reconsider (Dkt. 78), followed by a motion to vacate the order for her deposition and seeking a stay of discovery as well as a protective order in the Northern District of Texas. (Dkt. 120.) Each motion was fully briefed by the parties in a matter of days, and the issuing court has already denied both motions. (Dkts.79, 90, 121, 127, 131.) ExxonMobil in turn has issued party discovery requests, sent document preservation letters to non-parties, and served non-party subpoenas.[3] At a telephonic hearing, the court asked whether the Massachusetts Attorney General planned to comply with the discovery order. (Ex. J, Conf. Tr. at 7:4-7:11.)[4] When she responded that she would not so comply (*id*. at 7:15), the court ordered her to respond to ExxonMobil's requests within ten days of receiving them, and further ordered the Attorney General to appear for a deposition on December 13. (Dkt. 117.) The issuing court also informed the parties that it would personally supervise the discovery it had ordered, which is proceeding on an expedited basis. (*Id.*)

ExxonMobil issued subpoenas to 11 non-parties, located in Massachusetts, New York, Colorado, Washington D.C., and Virginia. (Decl. ¶ 7.) All 11 recipients have already responded by raising objections that are substantially identical to Pawa's and, aside from the production of two document retention policies, none of them has produced any documents.[5] The deposition of Attorney General Healey is now less than a week away (Dkt. 117), and ExxonMobil has not received a single document from a party or non-party. (Decl. ¶ 9.)

---

[3] During this period, ExxonMobil also amended its complaint to, in part, to ensure that "court-ordered jurisdictional discovery should occur promptly, but only once." (Dkt. 77.) The issuing court granted ExxonMobil's motion to expedite the briefing on the motion to amend, allowing the parties four days to file a response. (Dkt. 92.) The motion to amend was granted the day after it was fully briefed. (Dkt. 99.)

[4] All citations in the form "Conf. Tr. at _:_-_:_"refer to the November 16, 2016 status conference hearing.

[5] *See* Decl. ¶ 8-9; Exs. K, L, M, N, O, P, Q, R.

The evening prior to Pawa's November 23, 2016 filing, Pawa's counsel contacted ExxonMobil's counsel telephonically to say that he would move to quash the subpoenas the following day unless they were withdrawn. On December 5, 2016, ExxonMobil's counsel reached out telephonically to Pawa's counsel to seek assent for the motions for admission *pro hac vice* Exxon intended to file. On December 6, 2016, ExxonMobil's counsel initiated another telephonic meet and confer with Pawa's counsel, during which he did not consent either to ExxonMobil's *pro hac vice* applications or to its motions to transfer and to compel. (Decl. ¶ 11.)

## ARGUMENT

### I. THE COURT SHOULD TRANSFER THIS MOTION TO THE NORTHERN DISTRICT OF TEXAS.

Pawa's motion to quash and ExxonMobil's cross-motion to compel are precisely the types of motions that ought to be resolved by the court that issued the discovery order. Because the issuing court is best positioned to evaluate the effects of these motions on its expedited discovery schedule and the suit as a whole, they should be transferred to the Northern District of Texas to avoid inconsistent rulings. Should the Court reach the merits, it should deny Pawa's motion to quash and grant ExxonMobil's motion to compel, because Pawa's unspecified appeals to the First Amendment and other privileges are unsupported, and his claims of irrelevance and undue burden contradict the discovery order.

#### A. Applicable Law

A court evaluating a motion to quash under Rule 45 may transfer the motion to the court that issued the subpoena if it finds that "exceptional circumstances" justify the transfer. Fed. R. Civ. P. 45(f). To determine whether "exceptional circumstances" exist, courts analyze whether ruling on the motion would "disrupt[] the issuing court's management of the underlying litigation." *Id.* (2013 Adv. Cmte. Notes).

Adjudicating a motion to quash could frustrate the issuing court's management of a case in several ways. *See id.* When multiple third parties in different jurisdictions receive similar

subpoenas, they often raise similar objections, creating the possibility of inconsistent rulings unless each motion is transferred. *See id.*; *Valle del Sol, Inc.* v. *Kobach*, No. 14-mc-219, 2014 WL 3818490, at *4 (D. Kan. Aug. 4, 2014). Alternatively, where the issuing court directs expedited discovery, denying a transfer may disrupt a carefully managed schedule. *See Google, Inc.* v. *Digital Citizens Alliance*, No. 15-00707, 2015 WL 4930979, at *3 (D.D.C. July 31, 2015). And in some cases, the issuing court's familiarity with the underlying issues best positions it to evaluate the effect of any discovery ruling on the case as a whole. *Wultz* v. *Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014). Transfer is proper for any and all of these reasons. *See id.*

### B. Discussion

#### 1. Transfer Is Proper Because the Questions Presented by This Motion Will Arise in Multiple Jurisdictions.

Like Pawa, the other 10 subpoena recipients claim that (1) the requested materials are protected by the First Amendment; (2) the subpoenas are not authorized by or relevant to the issuing court's discovery order; and (3) the requests are unduly burdensome or overbroad.[6] If each of the five different courts likely to confront these arguments resolves them in the first instance, then the parties—and the issuing court—may be forced to grapple with inconsistent rulings regarding the scope of the same discovery order. That result would likely create unnecessary delay and require further action by the issuing court. For precisely this reason, the Rules Committee expressly provided for transfer of a third-party's motion to quash when the same questions are likely to arise in several different jurisdictions, *see*, Fed. R. Civ. P. 45(f) (2013 Adv. Cmte. Notes), and courts routinely transfer motions under these circumstances to avoid such a result.[7]

---

[6] *Compare* Pawa Br. at 1, 5, 7, 18-19, *and* Pawa Exs. G, H, *with* Exs. K, L, M, N, O, P, Q, R.

[7] *See, e.g.*, *Agincourt Gaming, LLC.* v. *Zynga, Inc.*, No. 2:14-CV-0708-RFB-NJK, 2014 WL 4079555, at *19 (D. Nev. Aug. 15, 2014) (transferring subpoena-related motions because it would "reduce[ ] the number of courts that could possibly rule on similar issues"); *Valle del Sol, Inc.*, 2014 WL 3818490, at *12 (transfer warranted by "importance of ensuring consistency in rulings on the issues involved, preserving judicial economy, and permitting the court with the most experience and knowledge of the facts and issues to rule on these matters"); *Digital Citizens*, 2015 WL 4930979, at *9 (granting motion to transfer due to (i) "potential of interfering with

### 2. Transfer Is Proper to Avoid Frustrating the Issuing Court's Management of Discovery.

The issuing court is personally supervising discovery in this case. (Dkt. 117.) A transfer of this motion will avoid interfering with the expedited schedule that court has set. For instance, the court has allotted 10 days for the Massachusetts Attorney General to respond to any discovery requests, *id.*, and permitted ExxonMobil only three days in which to respond to her motion to vacate its order scheduling her deposition, (Dkt. 123), and only *one day* in which to respond to the New York Attorney General's motion to quash (Dkt. 139). That schedule allows the court to resolve any discovery motions well in advance of the December 13 deposition, so that ExxonMobil will have received any discovery it is entitled to take by that date.

If these motions are not transferred to the issuing court, they will not be resolved in advance of December 13—let alone in time for ExxonMobil to receive and review any documents. Indeed, as it currently stands, Pawa's opposition to ExxonMobil's motion to compel will not even be due until December 21. Where the issuing court has set and maintained an expedited discovery schedule, transfer is proper to avoid interfering with "the discovery timeline of the underlying litigation." *See, e.g.*, *Digital Citizens*, 2015 WL 4930979, at *3 (granting a motion to transfer because the issuing court had scheduled discovery at a "'very rapid pace'").

### 3. Transfer Is Proper Because the Issuing Court Is Best Positioned to Assess the Effect of the Discovery Order on the Litigation as a Whole.

The questions presented by these motions have crucial implications for the scope of discovery as a whole in this matter, and they are already pending before the issuing court. (*See* Dkts. 136, 140.) For example, Pawa contends that his communications with the defendants are protected by various privileges, including the attorney-client privilege, the work product privilege, and the law enforcement privilege. (Pawa Br. at 12-16.) Whether those privileges apply between Pawa and the defendants will have important repercussions regarding the

---

the discovery timeline of the underlying litigation," (ii) complexity of relevance and privilege questions, and (iii) "risk of inconsistent results").

discovery ExxonMobil can take from defendants. Questions that have far-reaching significance for the case as a whole ought to be resolved by the issuing court, which is "better situated to determine what implications the resolution of the motion[s] will have on the underlying litigation." *See Costco Wholesale Corp.* v. *Crane*, No. 16-mc-80189, 2016 WL 5394115, at *3 (N.D. Cal. Sep. 27, 2016) (internal quotation marks omitted). That is particularly so where, as here, the issuing court is intimately familiar with the relevant discovery issues. *See Valle del Sol*, 2014 WL 3818490, at *4. Indeed, the issuing court currently has two motions concerning discovery in this matter pending before it. (Dkts.136, 140.) There is no reason that the instant motions—which present closely related questions—should be decided elsewhere.[8]

## II. IF THE COURT CHOOSES TO DECIDE THESE MOTIONS, THE COURT SHOULD DENY THE MOTION TO QUASH AND COMPEL COMPLIANCE WITH THE SUBPOENAS.

Should the Court reach the merits, it should deny Pawa's motion to quash and grant ExxonMobil's motion to compel compliance with the subpoenas. Although Pawa's motion misleadingly focuses on whether or not he was entitled to petition the attorneys general, the propriety of his conduct is not at issue. The question presented by this case is whether the attorneys general, having listened to Pawa, may use their law enforcement powers to curtail another entity's First Amendment rights. The answer to this question must be no. And yet this is what the attorneys general have done, in the process violating ExxonMobil's civil rights by launching investigations for the purpose of silencing dissenting views—as Pawa has called for them to do in the past.

Materials in the public domain suggest that Pawa's files contain information tending to show that the attorneys general have so violated ExxonMobil's rights. But the defendants in the

---

8 Nor is there any reason to suspect that the issuing court will require Pawa to incur anything other than the minimal burdens that necessarily follow from transfer. The Court has already demonstrated its willingness to resolve issues by telephonic conference (Dkt. 117), which is precisely how the advisory notes recommend a court deal with third-party objectors to subpoenas. *See Zynga, Inc.*, 2014 WL 4079555, at *8 (citing the advisory committee guidance that courts can provide telephonic appearances when motions to quash are transferred); Fed. R. Civ. P. 45 (2013 Adv. Cmte. Notes.).

underlying case have improperly resisted all efforts to obtain documents bearing on their conspiracy, including materials concerning their communications with Pawa in particular.[9] Because such evidence would support ExxonMobil's claims, ExxonMobil is entitled to discover it. Pawa patently fails to carry his burden in claiming privilege or First Amendment protection. Nor is there any merit to his assertion of irrelevance or undue burden, pursuant to the issuing court's discovery order. Accordingly, the Court should deny Pawa's motion to quash and grant ExxonMobil's cross-motion to compel.

### A. Pawa Fails to Show that Compliance Will Chill his First Amendment Rights.

#### 1. Applicable Law

A party asserting a claim of First Amendment privilege must make a *prima facie* showing that producing the requested information will chill its exercise of the asserted First Amendment right. *See In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 488-90 (10th Cir. 2011); *see also United States* v. *Comley*, 890 F.2d 539, 544 (1st Cir. 1989). The party asserting such a privilege must submit evidence tending to show that it will be chilled, and it cannot rely on its mere say-so. *In re Motor Fuel*, 641 F.3d at 489. Nor can the requisite chill be "inferred" from unsupported claims that are lacking in particularized detail. *Id.* at 490.

Courts have refused to accept "conclusory affidavits" that merely assert a party will be chilled. *A & R Body Specialty & Collision Works, Inc.* v. *Progressive Cas. Ins. Co.*, No. 3:07-CV-929-WWE, 2013 WL 6044333, at *6 (D. Conn. Nov. 14, 2013). Showing only that disclosure will cause embarrassment or annoyance likewise does not suffice to demonstrate a

---

[9] The New York Attorney General's Office has evinced a similar attitude in attempting to shield records concerning its climate change agenda from disclosure under New York's Freedom of Information Law as it has in refusing to cooperate with the discovery ordered in the underlying case. (Dkt. 136.) The New York Supreme Court recently ruled that the New York Attorney General improperly withheld public records seeking common interest agreements entered into by the New York Attorney General, which mention, among others, "Matt Pawa" or "the Pawa Law Group." (Ex. S at 2.) The court ordered the Attorney General to pay attorneys' fees and costs, because it "lacked a reasonable basis" for responding to the requests by merely "parroting" the statutory exemptions "without any description of the documents." *See Competitive Enterprise Institute* v. *Attorney General of N.Y.*, No. 5050-16, 2016 WL 6989406, at 1-2 (N.Y. Sup. Ct. Albany Cty. Nov. 21, 2016).

chilling effect. *See Bailey* v. *Maine Comm'n on Governmental Ethics & Election Practices*, No. 1:11-CV-00179-JAW, 2011 WL 6370084, at *2 (D. Me. Dec. 19, 2011). Instead, courts insist on real, substantial evidence, such as multiple declarations demonstrating that production will result in threats or harassment. *See, e.g.*, *In re Motor Fuel*, 641 F.3d at 491.[10]

Even where a party carries its burden of demonstrating a *prima facie* case, the party asserting the privilege *still* must produce the requested materials if the requesting party demonstrates a need for the information that outweighs the potential harm from production. *Bruno & Stillman, Inc.* v. *Globe Newspaper Co.*, 633 F.2d 583, 595-96 (1st Cir. 1980). In this Circuit, when First Amendment interests are implicated, courts weigh the "potential harm" of disclosure against the party's "need for the requested information." *Id.* When a party demonstrates a "compelling need" for the requested information, it must be produced despite any applicable First Amendment privilege. *See Hispanic Leadership Fund, Inc.* v. *Walsh*, No. 112 Civ. 1337-MADTWD, 2014 WL 12586844, at *4 (N.D.N.Y. June 9, 2014); *Newton* v. *Nat'l Broad. Co.*, 109 F.R.D. 522, 527 (D. Nev. 1985).

**2. Discussion**

Pawa's primary contention is that the subpoenas should be quashed because they seek materials protected by the First Amendment privilege. But he has not come close to demonstrating that the subpoenas burden his associational rights. Indeed, his declaration consists entirely of the kind of conclusory allegations that courts routinely reject as inadequate to establish a chilling effect. All four supposed consequences listed in his declaration are either unrelated to the subpoenas or plainly inadequate to suggest that he will suffer a concrete harm.

First, Pawa says he has recently decided not to speak at a public event, because giving such a talk would permit ExxonMobil to "selectively and misleadingly take [his] words out of

---

[10] For instance, Pawa relies on *Sexual Minorities of Uganda* v. *Lively*, which involved definite, "severe," and "uncontroverted" consequences, including "'economic reprisal, . . . threat of physical coercion [and arrest], and other manifestations of public [and official] hostility' to LGBTI people in Uganda." No. 3:12-30051-MAP, 2015 WL 4750931, at *3-4 (D. Mass. Aug. 10, 2015) (internal quotation marks omitted).

context" to support its pending suit. (Pawa Decl. ¶ 20(a).) That risk, of course, has nothing to do with the subpoenas; if Pawa makes public statements, ExxonMobil—like the rest of the public—will have access to them. Pawa's decision to forego a single public speaking opportunity demonstrates no chilling of any associational rights traceable to ExxonMobil's subpoenas. On the contrary, the fact that he has continued to receive public speaking invitations—apparently within the last two weeks—points to the opposite conclusion. *Id.*

Tellingly, this dubious "consequence" is the only concrete purported infringement that Pawa can identify. Pawa does not and cannot claim that compliance with the subpoenas will have any other liberty-restricting effects. Instead, he says he must now "consider" whether to (1) "reply to work e-mails"; (2) attend "Exxon-related" meetings; and (3) engage in "any communications" with attorneys general's offices. (Pawa Decl. ¶¶ 20(b)-20(d).) Those are precisely the sort of vague allegations that courts reject as insufficient to show a chilling of First Amendment rights. Pawa never explains why or how the subpoenas bear on routine work e-mails (which ExxonMobil has not subpoenaed), or even Exxon-related meetings (which, if they are not embraced by the requests, are not subject to disclosure). (*See* Pawa Br. at 10; Pawa Decl. ¶¶ 20(b)-20(c).) While the subpoenas seek Pawa's communications with attorneys general, Pawa does not even claim that the subpoenas have caused him to refrain from engaging in such communications—just that he has "consider[ed]" whether to do so. (Pawa Decl. ¶¶ 20(b).) In short, Pawa has not carried his burden of showing a real First Amendment harm rather than the sort of annoyance or embarrassment that courts reject as insufficient to justify non-disclosure. *Bailey*, 2011 WL 6370084, at *2.

Even if Pawa had shown some chilling effect on his conduct, ExxonMobil would still be entitled to the discovery it seeks. Pawa's role in this case features prominently in the court's discovery order. (Dkt. 73 at 4.) The investigations commenced by the attorneys general bear an eerie resemblance to the "strategy" called for at Pawa's 2012 conference. (Dkt. 100 ¶ 47.) The

problem is that the purpose of the strategy was *not* to discover criminal wrongdoing; it was to vilify and delegitimize ExxonMobil and pressure it to modify its political speech. (*Id.* ¶ 48.) Although Pawa is free to pursue such a goal, state attorneys general are not. Insofar as the defendants acted on Pawa's plan, they acted in bad faith.

ExxonMobil is entitled to discover materials tending to show that the attorneys general shared Pawa's goals, and undertook their investigations for the purpose of putting political pressure on the company rather than enforcing the law. The public record on this score is telling. Pawa attended a secret meeting with the attorneys general on the day of the press conference. He was then instructed by the New York Attorney General's office "to not confirm that you attended or otherwise discuss the event." (Ex. H.) Those facts alone justify ExxonMobil's requests for Pawa's communications with the attorneys general.

Pawa's declaration confirms that ExxonMobil has no other way of obtaining the materials it seeks. Indeed, Pawa attests to two crucial facts in his declaration: (1) he did not distribute or share any hard copy materials during his meeting with the attorneys general, and (2) he has documents responsive to ExxonMobil's requests. (Pawa Decl. ¶¶ 15, 18.) ExxonMobil will not be able to obtain these materials from the defendants or from other non-parties—they are in Pawa's exclusive possession, by his own admission. Where parties have no other way of accessing relevant information, courts hold that the parties' need for the information requires disclosure. *Newton*, 109 F.R.D. at 527.[11]

---

[11] In his brief, Pawa claims that ExxonMobil is seeking discovery to support a lawsuit against him, and then claims that such a suit would be improper under the Massachusetts Anti-SLAPP statute. (Pawa Br. at 17.) Pawa's attempt to set up this straw man argument should be rejected. ExxonMobil seeks discovery from Pawa because it believes materials in his possession are highly relevant to the Attorney General's motive in launching her investigation, not because ExxonMobil is covertly planning to sue Pawa. In any event, the Anti-SLAPP statute provides a vehicle for dismissing claims against a wrongfully sued party. *See* MASS. GEN. LAWS ch. 231, § 59H (2016); *Jobs First Indep. Expenditure Political Action Comm.* v. *Coakley*, No. 14-14338-NMG, 2016 WL 6661142, at *3 (D. Mass. Nov. 10, 2016). It "does not provide an affirmative cause of action." *Blackman* v. *Savino*, No. 13-P-1054, 2014 WL 1499346, at *2 n.7 (Mass. App. Ct. Apr. 18, 2014); *see also McLarnon* v. *Deutsche Bank Nat. Trust Co.*, No. 14-13233-FDS, 2014 WL 5317813, at *5 (D. Mass. Oct. 17, 2014). And "even [under] the broadest interpretation," an anti-SLAPP statute does not cover a "request for a subpoena." *Tendler* v. *www.jewishsurvivors.blogspot.com*, 164 Cal. App. 4th 802, 807 (2008).

### B. The Requested Materials Are Not Protected by Any Privilege.

Pawa's other claims of privilege also fail. Pawa asserts that his communications with attorneys general on the day of the press conference were protected by the attorney-client privilege, the work product privilege, and the law enforcement privilege. But those privileges do not apply where, as here, information is shared with parties other than a client or prospective client, and without an expectation of confidentiality. In fact, materials in the public record show that at least some of the attorneys general understood that the presentation would not be confidential. Pawa's invocation of the law-enforcement privilege is similarly spurious. Pawa's motion to quash on grounds of privilege therefore should be denied.

#### 1. Applicable Law

A communication is protected by the attorney-client privilege only if a client or potential client reasonably expected that the communication would be kept confidential. *United States* v. *Dennis*, 843 F.2d 652, 657 (2d Cir. 1988). The attorney-client privilege therefore does not protect communications that have been shared with parties other than the client. *Cavallaro* v. *United States*, 284 F.3d 236, 250-51 (1st Cir. 2002).

The work product privilege protects from disclosure materials prepared "*by or for*" a party, or the party's representative, in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3) (emphasis added); *Colonial Gas Co*. v. *Aetna Casualty and Surety Co.*, 144 F.R.D. 600, 605 (D. Mass 1992). As with the attorney-client privilege, the party claiming the work product privilege must have a reasonable basis for believing that the work product would be kept confidential. *In re Atl. Fin. Mgmt. Sec. Litig.*, 121 F.R.D. 141, 145 (D. Mass. 1988).

The law enforcement privilege—unsurprisingly—can be deployed only by government officials, and only in defense of government records. *Sterling Merch., Inc*. v. *Nestle, S.A.*, 470 F. Supp. 2d 77, 83 (D.P.R. 2006); *United States* v. *Ocasio*, No. EP–11–CR–2728–KC, 2013 WL 2458617, *5 (W.D. Tex. June 6, 2013). Private parties cannot move to quash on the basis of the law enforcement privilege. *Sterling*, 470 F. Supp. 2d at 83.

### 2. Discussion

Pawa has not shown that any of these privileges apply. He argues that the requested communications are protected by the attorney-client privilege, but he acknowledges that none of the attorneys general is now or ever was his client in connection with the ExxonMobil investigations. (Pawa Decl. ¶ 19.) Instead, Pawa claims that he believed the attorneys general to be prospective clients, based on "objective information" that he never describes. (*Id.*)

As the party asserting the privilege, Pawa bears the burden of showing that it applies. *In re Grand Jury Proceedings*, 802 F.3d 57, 65 (1st Cir. 2015). By merely referring in the abstract to "objective information" supposedly supporting his belief, he has provided no basis on which the Court could find in his favor. (Pawa Br. at 16.) *See, e.g.*, *In re Grand Jury Subpoena*, Misc. No. 86-738, 1986 WL 13539, at *2 (D. Mass. Nov. 26, 1986). That failure alone suffices to defeat his claim of privilege.

In any event, materials in the public record demonstrate that at least some of the parties with whom he shared the materials did not have the required expectation that Pawa's presentation would be confidential. In fact, an official from the Vermont Attorney General's office who helped prepare for the Green 20's then-upcoming meeting took just the opposite view. He explained that "anyone providing anything in writing at the conference should assume that it may get produced," and that Pawa, in particular, should "stick to what is in the public domain or be prepared to have those materials become public." (Ex. I at 1.) In stark contrast to Pawa's argument, at least one of the purportedly potential "clients" in fact expected that the materials would become public, and openly said as much. On this record, it is clear that the attorney-client privilege does not apply. *See Dennis*, 843 F.2d at 657; *Cavallaro*, 284 F.3d at 250-51.[12]

---

[12] Pawa suggests, without explanation, that the common interest doctrine somehow renders his communications privileged. Pawa Br. at 16 n.16.He does not even attempt to develop this argument, much less identify the nature of the common interest. Accordingly, this argument, even if it were meritorious—and it is not—should be deemed waived. *See Rodriguez* v. *Municipality of San Juan*, 659 F.3d 168, 175 (1st Cir. 2011). In any event, the same disclosures that preclude privilege also preclude common interest. The common interest doctrine

For similar reasons, Pawa's presentation to the attorneys general is not protected by the work product doctrine. First, Pawa had no client for whom he could have prepared these presentations in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3); *Colonial Gas Co,* 144 F.R.D. at 605. Second, as described above, neither Pawa nor the attorneys general had a reasonable basis for believing that Pawa's presentation and communications would be kept confidential. *See In re Atl. Fin. Mgmt. Sec. Litig.*, 121 F.R.D. at 145. Because the materials were shared with multiple parties—none of whom was his client, and none of whom could have reasonably expected that the materials would remain confidential—any claim of work product privilege, even if the doctrine did apply, would be waived. *Id.*

Pawa's half-hearted assertion of the law enforcement privilege is weaker still. The law enforcement privilege can be asserted only by the government. *See Ass'n for Women in Sci.* v. *Califano,* 566 F.2d 339, 343 (D.C. Cir. 1977); *Sterling Merch., Inc.*, 470 F. Supp. 2d at 83; *see also United States* v. *Lilly*, 185 F.R.D. 113, 115 (D. Mass. 1999). Pawa is a private party, and he develops no argument—nor could he—that his relationship with the attorneys general is so close that he could be considered the government. (Pawa Br. at 16.)

### C. The Subpoenas' Requests Are Not Overbroad, and the Court Should Compel Compliance with the Subpoenas.

Once the hollow assertions of privilege are stripped away, Pawa's motion to quash ExxonMobil's subpoenas cannot survive. Accordingly, ExxonMobil seeks an order compelling Pawa to produce the responsive documents he concedes are in his possession. With the deposition of the Attorney General only days away, Pawa's production of these materials is

---

merely "extend[s] the attorney-client privilege to any privileged communication shared with another represented party's counsel in a confidential manner for the purpose of furthering a common legal interest." *Hanover Ins. Co.* v. *Rapo & Jepsen Ins. Services, Inc.*, 449 Mass. 609, 612 (2007). Thus, even if Pawa's communications with multiple parties did not destroy any purported privilege, the fact that he communicated this information to a party who did *not* believe the communications were confidential surely did. *See United States* v. *Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 28 (1st Cir. 1989) ("In addressing whether a given communication was meant to be confidential, what 'the client reasonably understood' is 'the key question.'" (internal citations and emphasis omitted)).

crucial and would provide ExxonMobil with the bare minimum it needs to prepare for the upcoming depositions of the parties.

### 1. Applicable Law

"It is well-established that 'the non-party witness is subject to the same scope of discovery under Rule 45 as that person would be as a party to whom a request is addressed pursuant to Rule 34.'" *Rockstar Consortium US LP* v. *Google*, No. 14-91322-FDS, 2015 WL 5972422, at *4 (D. Mass. Oct. 14, 2015) (quoting Fed. R. Civ. P. 45(f) (1991 Adv. Cmte. Notes)) (internal alterations omitted). Accordingly, "[a] subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement." *E.E.O.C.* v. *Texas Roadhouse, Inc.*, 303 F.R.D. 1, 2 (D. Mass. 2014). "To that end, Rule 26(b) permits 'discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.'" *Thomas & Betts Corp*. v. *New Albertson's, Inc.*, No. 10-11947-DPW, 2013 WL 11331377, at *2 (D. Mass. July 11, 2013) (quoting Fed. R. Civ. P. 26(b)). To satisfy this standard, the evidence sought need not be "directly connected" to a claim; it is sufficient for the materials to be probative of a theory advanced by the requesting party. *See In re Pub. Offering PLE Antitrust Litig.*, 233 F.R.D. 70, 78 (D. Mass. 2006).

To determine whether a subpoena is proper, courts balance the importance of the information sought to the requesting party's case against the burden on the producing party. *See Gill* v. *Gulfstream Park Racing Ass'n., Inc.*, 399 F.3d 391, 400 (1st Cir. 2005); *United Therapeutics Corp.* v. *Watson Labs., Inc.*, No. 16-MC-91176, 2016 WL 5334653, at *3–*4 (D. Mass. Sept. 22, 2016). The party resisting discovery bears the burden of showing that the subpoena imposes an undue burden. *See Thomas & Betts Corp.*, 2013 WL 11331377, at *4. When determining whether a subpoena imposes an undue burden, courts consider such factors as "the relevance of the documents sought, the necessity of the documents sought, the breadth of the request[,] . . . expense and inconvenience." *Sawyer* v. *Purdue Pharm. Corp.*, No. 12-MC-

019-LM, 2012 WL 1949334, at *2 (D.N.H. May 29, 2012) (quoting *Demers* v. *LaMontagne*, No. 98-10762-REK, 1999 WL 1627978, at *2 (D. Mass. May 5, 1999)) (alteration in original).

### 2. Discussion

Despite Pawa's protests, the subpoenas plainly request documents relevant to the question of whether Attorney General Healey issued her CID in bad faith. As discussed above, these requests also indisputably fall within the scope of the issuing court's discovery order, which devoted a substantial portion of its discussion to explicitly describing allegations concerning Pawa's closed-door meetings with the attorneys general in preparation for the press conference. (Dkt. 73 at 4.) Moreover, Pawa does not dispute that materials responsive to at least nine of these requests exist and are within his custody and control.[13] He also effectively concedes that at least some of these documents cannot be procured from any party in the underlying case or any other subpoena recipient.[14]

Furthermore, the unremarkable burden Pawa may face in identifying and producing responsive documents does not outweigh ExxonMobil's substantial and pressing need to obtain these materials prior to the impending depositions, and in keeping with the expedited discovery ordered by the issuing court. First, Pawa does not contend that the subpoenas' requests are insufficiently specific. Second, Pawa's suggestion that materials are unnecessary because they could be obtained directly from the attorneys general is misguided, since ExxonMobil has yet to receive a single document responsive to these requests from any party or subpoena recipient. (Decl. ¶ 9.) *See Green* v. *Cosby*, 152 F. Supp. 3d 31, 37-38 (D. Mass. 2015), *modified on other grounds*, 160 F. Supp. 3d 431 (D. Mass. 2016) (rejecting subpoena recipient's contention that her deposition was cumulative since "any knowledge she may have about the allegations . . . would

---

[13] Pawa does not dispute that he has materials responsive to requests number 1, 5, 6, 7, 8, 11, 15, and 16. (*See* Pawa Ex. G.)

[14] For instance, Pawa concedes that he has materials responsive to requests 5 and 6, which seek documents shedding light on his presentation to the assembled attorneys general on climate change litigation, but admits that he did not circulate or otherwise provide any of these materials.(Pawa Ex. G; Pawa Decl. ¶ 15.)

have come through Defendant," because defendant had not yet testified and it was not clear that the defendant and recipient's testimony would be consistent).

Finally, the burden Pawa claims—of searching for responsive documents, performing a privilege review, and producing said documents—is no different than the burden imposed on any subpoena recipient. The time period and scope of the requests are narrowly tailored to target materials that might reveal Attorney General Healey's bad faith, such as Pawa's communications with the Attorney General and other potential members of her coalition and materials that Pawa may have conveyed to this group. Because ExxonMobil has a compelling need for precisely these documents, and has yet to receive a single production from any party or subpoena recipient, the burden entailed by the subpoenas is not undue.[15] *See Thomas & Betts Corp.*, 2013 WL 11331377, at *5. ExxonMobil therefore requests that the Court command the parties to meet and confer within five (5) days of the Court's order.[16]

## **CONCLUSION**

For the foregoing reasons, ExxonMobil respectfully requests that this Court transfer these motions to the Northern District of Texas where the underlying case is pending. Alternatively, ExxonMobil requests that the Court deny Pawa's Motion to Quash, and grant its Cross-Motion to Compel.

---

15 Moreover, the 14-day response period established in the subpoena is in complete accord with Rule 45(d), which provides that parties must serve objections to a subpoena "before the *earlier* of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d) (emphasis added). Courts in this Circuit frequently order compliance over shorter periods, and have noted that it is "better practice" for the responding party to provide a privilege log contemporaneous with the response. *See Providence Piers, LLC* v. *SMM New England, Inc.*, No. 12-532S, 2014 WL 11532189, at *5 (D.R.I. Mar. 25, 2014).

16 Pawa's conclusory request for sanctions should be denied because the subpoenas do not impose an undue burden. Even if they did, Rule 45(c)(1) sanctions, as applied to parties and nonparties, are inappropriate "absent undue burden imposed by an oppressive subpoena, a facially defective subpoena, or bad faith." *Mount Hope Church* v. *Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012). A contrary interpretation would render the scope of permissible sanctions under Rule 45 "so broad as to chill or deter the vigorous advocacy on which our civil justice system depends." *Id.* at 429-30. Accordingly, even if the subpoenas were overbroad—which they are not—the standard remedy would be to limit the subpoenas' scope, not to quash and impose sanctions. *See, e.g.*, *Enargy Power (Shenzhen) Co.* v. *Xiaolong Wang*, No. 13-11348-DJC, 2014 WL 2048416, at *2 (D. Mass. May 16, 2014).

Dated: December 7, 2016

EXXON MOBIL CORPORATION

/s/ Patrick J. Conlon
Patrick J. Conlon (*pro hac vice*)
patrick.j.conlon@exxonmobil.com
Daniel E. Bolia (*pro hac vice*)
daniel.e.bolia@exxonmobil.com
1301 Fannin Street
Houston, TX 77002
(832) 624-6336

PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP

/s/ Michelle Parikh
Theodore V. Wells, Jr. (*pro hac vice*)
twells@paulweiss.com
Michele Hirshman (*pro hac vice*)
mhirshman@paulweiss.com
Daniel J. Toal (*pro hac vice*)
dtoal@paulweiss.com
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
Fax: (212) 757-3990

Michelle Parikh (*pro hac vice*)
mparikh@paulweiss.com
Justin Anderson (*pro hac vice*)
janderson@paulweiss.com
2001 K Street, NW
Washington, D.C. 20006-1047
(202) 223-7300
Fax: (202) 223-7420

*Counsel for Exxon Mobil Corporation*

FISH & RICHARDSON P.C.

/s/ Thomas C. Frongillo
Thomas C. Frongillo
State Bar No. 180690
frongillo@fr.com
Caroline K. Simons
State Bar No. 680827
simons@fr.com
One Marina Park Drive
Boston, MA 02210
(617) 542-5070